# Exhibit A

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF MICHIGAN

In Re:

Atlas Heavy Engine Co.
(d.b.a. Worldwide Diesel)

      Debtor.
_____/

Case No: 23 - 00530
Chapter 11, Subchapter V
Hon. Scott W. Dales
Filed On: March 14, 2023

## SWORN STATEMENT OF RICHARD J. CAMPBELL, PRESIDENT OF ATLAS HEAVY ENGINE CO, IN SUPPORT OF ITS FIRST DAY MOTIONS

I, Richard J. Campbell, being duly sworn, deposes that, to the best of my knowledge and belief:

### BACKGROUND

1. Atlas Heavy Engine Co., d/b/a Worldwide Diesel ("Atlas") is a retail company and machine shop specializing in refurbishing and selling used diesel engines and parts.

2. Atlas' headquarters and 45,000 square foot warehouse are located at 1515 N. Old US HWY 31, Niles, Michigan.

3. Quality Truck Parts, Inc., f/d/b/a "Worldwide Diesel" ("QTP"), was originally founded in 2007 by Gregory Ferrier.

4. On October 8, 2021, I purchased QTP's assets, including the assumed name "Worldwide Diesel," through Atlas., which is a corporate entity my wife and I incorporated solely for the purpose of purchasing QTP's assets.

5. Prior to incorporating Atlas, I served for eighteen months in the US Army as a heavy wheeled vehicle mechanic. After being medically discharged from the Army, I earned a

bachelor's degree in business administration from the University of North Carolina and a master's degree in business Administration from the University of Maryland.

6. After graduation, I moved to California for employment.

7. While working in California, I met my wife and started a family. My family and I still reside in California where my wife and I, in addition to working for Atlas, both also work in the technology industry.

8. Although I work in the technology industry, my dream was to utilize my knowledge of the heavy engine industry and my educational background in business administration to own and operate a successful small business that would provide for my family's future.

9. I researched a number of business opportunities before my wife and I decided to purchase QTP's assets, which required us to liquidate most of our assets, including retirement accounts and investments.

10. I am Atlas' sole shareholder. Most of my shares are owned through my 401(k).

11. As President, my responsibilities include managing Atlas' strategic operations. As such, I am familiar with the nature and extent of its assets, liabilities, and transactional history.

### EVENTS LEADING TO CHAPTER 11 FILING

12. The purchase price for QTP's assets was $3,825,000.00 ("Purchase Price").

13. The Purchase Price, closing costs, and startup capital was financed through: (i) a loan from Huntington National Bank ("HNB") and Small Business Administration ("SBA") for $3,392,000.00; (ii) seller financing from Quality Truck Parts, Inc for $390,000.00; and (iii) a cash infusion from my wife and I of approximately $210,000.00.

14. Within six months from closing, Atlas began receiving numerous warranty claims, which totaled approximately $95,000.00.

15. Fulfilling these warranty claims sapped Atlas' working capital.

16. At the same time, the diesel engine industry experienced historic inventory depletions related to supply chain issues.

17. The industry wide supply chain shortages resulted in sustained inability to replenish inventory at prices and margins that our operations, and the Purchase Price, were based on.

18. To counter the effects of the supply chain shortages, I made a number of strategic decisions, including: (i) implementing cost-saving measures, such as laying off approximately 25% of the staff; (ii) increasing services, and (iii) purchasing 2nd Chance Diesel, a quality machine shop in Kearney Missouri specializing in rebuilding diesel engines, in an attempt to vertically integrate inventory production for Atlas to sell.

19. Unfortunately, reducing operating costs, increasing services, and purchasing 2nd Chance Diesel were insufficient remedies to close the operating margins necessary to generate sufficient revenue to service the monthly loan payments HNB, which ultimately resulted in Atlas defaulting under its monthly payment obligations to HNB.

20. The vast majority of the Purchase Price financed by HNB/SBA was allocated to "goodwill," working capital, and closing costs. In HNB/SBA's loan documents, less than $1,050,000.00 of the $3,392,000.00 loan was allocated to other tangible or intangible property, including real property, personal property, inventory, receivables, equipment, machinery and vehicles. The value of Atlas' "goodwill" has been eliminated, or substantially reduced, due to the extent of the unanticipated warranty claims, the increased operating costs, and the reduced revenues related to supply chain shortages.

21. Accordingly, upon information and belief, if Atlas liquidated in a Chapter 7 bankruptcy proceeding, after administrative fees and liquidation costs HNB/SBA would recover

less than the originally allocated asset value of approximately $1,050,000.00 and no other creditors would receive any distribution.

22. Although the reduced sales and increased expenses from the supply chain shortages resulted in Atlas being unable to service its original secured debt obligations to HNB/SBA, Atlas can, based on reduced overhead, increased services, and the gradual easing of global supply chain shortages, successfully service a reduced "crammed down" obligation to HNB/SBA and pay its unsecured creditors more than they otherwise would have received in a Chapter 7 liquidation.

## CASH COLLATERAL

23. Atlas is in immediate need of cash collateral to preserve the value of its estate.

24. Specifically, Atlas requires the use of the cash collateral during its Chapter 11 proceeding to pay its employees, utilities, insurance, and ordinary operating costs, including replenishing its inventory and maintaining its equipment.

25. Through its Chapter 11 proceeding, Atlas will restructure its liabilities, which will allow it to operate at margins sufficient to replenish its cash collateral through ongoing operations and ultimately propose a plan that will provide unsecured creditors with a higher distribution than they otherwise would have received in a Chapter 7 liquidation.

26. In order to do so, it requires use of its cash collateral, and such use is necessary to preserve the value of the estate and avoid irreparable harm.

## EMPLOYEES

27. As of the date of this sworn statement, Atlas employed nine full time employees, including myself and my wife.

28. Employee wages and salaries are paid weekly through a third-party payroll service, Guidant Financial Group.

29. From July 8, 2022, through February 21, 2023, my wife and I waived our salaries. I resumed paying my salary in February 2023 and received my first paycheck on March 3, 2023. My wife resumed in March of 2023 and received her paycheck on March 10, 2023.

30. If Atlas is not permitted to pay employee wages and benefits as agreed, it will be unable to retain employees and generate revenue.

31. If Atlas is unable to retain employees and generate revenue, then it will be unable to maintain, repair, and insure its primary assets.

32. Accordingly, it is critical that Atlas be permitted to continue to pay and honor all employee compensation and benefits so as to preserve the value of the estate.

## UTILITIES

33. Atlas' business headquarters at 1515 N. Old US Highway 31, Niles, Michigan 49120 contains its machinery, equipment, and inventory.

34. Without utilities such as electricity, heat, water, and internet/telephone, Atlas cannot successfully operate its physical location.

35. Indeed, any interruption of utility service to Atlas' businesses would severely disrupt and diminish its chance for a successful reorganization by reducing or eliminating its ability to support and communicate with its employees, vendors, and costumers.

36. Accordingly, Atlas requires an order prohibiting utility providers from altering, refusing, or discontinuing its services pending resolution of any disputed adequate assurance requests.

## CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, BUSINESS FORMS, AND AUTOMATIC PAYMENTS

37. Atlas utilizes a centralized cash management system in its ordinary course of business.

38. The cash management system is managed by our controller, Kathleen Long ("Ms. Long") and is comprised of three separate bank accounts: a checking and savings account at First United Credit Union and a checking account at HNB.

39. Our system for cash management provides a centralized and integrated method for Ms. Long to monitor and manage Atlas' finances, including collection of revenues and payments of expenses.

40. Atlas' customers typically pay in full at the time of sale for all goods purchased. Accordingly, deposits from revenue are easy to track and account for through our current Bank Accounts and cash management system.

41. Likewise, Atlas has relatively few credit transactions per month, which are easy to monitor and track through our current Bank Accounts and cash management system.

42. Closing our bank accounts, opening new bank accounts, and obtaining new business forms, including new checks for each account, is unnecessary because our current cash management system provides sufficient processes, procedures, and safeguards to satisfy all reporting requirements under Atlas' Chapter 11 proceeding and to ensure that only approved expenses are paid.

43. Allowing Atlas to continue operating using its existing bank accounts and business forms will minimize administrative costs, which will benefit our creditors.

44. To protect against inadvertent payment of pre-petition debts, immediately after Atlas files its Bankruptcy Petition I will contact our Banks to ensure that only approved expenses are paid. Furthermore, I will ensure that monthly copies of the bank statements for each Bank Account are promptly provided to the United States Trustee's Office each month.

## CONCLUSION

45. The relief sought in the Atlas' First Day Motions is necessary for it to operate in its Chapter 11, Subchapter V bankruptcy; to avoid irreparable harm to its business and the bankruptcy estate; and is in the best interests of its creditors.

Dated: 3/13/2023    By: _____
Richard Campbell, as President of
Atlas Heavy Engine Co., d.b.a. Worldwide Diesel